Stebbins agt. Howell.

---

## COURT OF APPEALS.

### Jane Stebbins and another agt. Matthias Howell.

Where a person under an agreement to purchase two lots of land, subject to the payment of a certain mortgage thereon, and to build a building on each lot, at a certain time and under certain conditions, upon the performance of which he is to receive a deed in fee of the premises; and after the buildings are partially built, he, by fraud and misrepresentation induces the mortgagee to release one of the lots, without any consideration therefor; a court of equity will restore the mortgagee, as far as possible, to his former condition as to the security, by decreeing that the purchaser pay in money to the mortgagee one-half the amount of the mortgage; although the purchaser alleges that the remaining lot and building are ample security for the whole mortgage money.

*June,* 1864.

THE plaintiffs held a mortgage given in February, 1856, for $5,500, on two building lots in the city of New York. In March, 1857, certain parties who had become owners in fee of the mortgaged premises, contracted to sell the lots to the defendant, Howell, he agreeing to erect a dwelling house on each lot, of a description given in such agreement, and to complete the same by the first day of March, 1858. Howell was entitled to a deed of the premises when the houses were inclosed, on paying the purchase money, less the plaintiffs' mortgage; and the deed was to contain a clause binding and subjecting Howell to the payment of the incumbrance. Howell commenced immediately to build the houses under the agreement. In August, 1857, while the houses were in process of construction, and had become inclosed, Howell, by representing to the plaintiffs that he was the owner of these lots, and that he desired to have them release the mortgage lien on one of these lots, and loan him the further sum of $1,000 on the remaining lot, he procured them to release the said mortgage lien on one of the lots, and after obtaining said release, and procuring the same to be recorded, he refused to take the loan and give the security promised. The representations of the said Howell, in respect to his ownership of the said lots was false, and he acted in bad faith in procuring the release of the mortgage lien upon said lot.

The plaintiffs, on discovering the fraud of Howell, commenced their action against him, setting forth in their complaint the above facts, and also that the said Howell was not the owner in fee of either of said lots, but only the holder of an agreement for the purchase and sale of the same. That the fee in the remaining lot was in one Browning, subject to the agreement for purchase, held by Howell. The said Browning was made a party defendant. That the interest of Browning in said lot was about $1,600. That plaintiffs had applied to Browning for his consent in writing to have the whole amount due on the mortgage charged upon said lot, the

fee of which was in him. But he refused to consent to the same.

The plaintiffs, among other things, pray for an injunction against Howell and Browning, and each of them, restraining them from conveying, or in any manner incumbering the said lots of ground, or any portion thereof. The plaintiffs also prayed that Howell should be directed to restore the said mortgage lien upon said lot, or that he should be decreed to pay to the plaintiffs the sum of $2,750, and interest, as the consideration of the release of the mortgage lien thus fraudulently obtained by him. The prayer for injunction was granted.

At the special term of the supreme court in the first district, held in June, 1858, the judge found the above facts as to the rights of the plaintiffs, and the fraudulent conduct of the defendant Howell, and found as a conclusion of law, that the plaintiffs were entitled to payment by the defendant Howell, of the sum of $2,750, being one-half the amount due upon said mortgage, with interest from the 26th September, 1857, and judgment was rendered for the same, and for costs, against the defendant Howell. Howell appealed to the general term, where the judgment of the special term was affirmed, and he now appeals to this court.

JOHN P. CROSBY, *for the respondent.*
SOLOMON L. HULL, *for the appellant.*

WRIGHT, J. The case is this : The plaintiffs held a mortgage given in February, 1856, for $5,500, on two building lots in the city of New York. In March, 1857, certain parties who had become the owners in fee of the mortgaged premises, contracted to sell the lots to the defendant Howell, he agreeing to erect a dwelling house on each lot, of a definite description, and complete the same by the first of March, 1858. Howell was to be entitled to a deed of the premises when the houses were inclosed, on paying the purchase

money, less the plaintiffs' mortgage; and the deed was to contain a clause subjecting and binding him to the payment of the incumbrance. Howell commenced forthwith to build the houses, under the agreement.

In August, 1857, while the houses were being built, and were inclosed, by a fraud of Howell, or bad faith on his part, the plaintiffs lost the lien of their mortgage on one of the lots, and the other may or may not be ample security for the sum of $5,500. It certainly is not without the building on it. But whether it is or not, is of no consequence whatever. Howell paid nothing for the release of the lien of the plaintiffs' mortgage, and never had any right to it, except upon his performing in good faith the contract, in pursuance of which the delivery of the release was anticipated.

In August, 1857, representing himself to the plaintiffs to be the owner of both lots, when in fact he had the title to neither, he applied to them to release the mortgage lien on one of the lots, and lend him an additional sum on the remaining lot. It was agreed to release the lien on one lot, and loan him the further sum of $1,000, which was afterwards extended to $1,500 on the other lot. Of course, the release and the additional loan were intended to be simultaneous transactions, and the agreement for both was manifestly based on the supposition that Howell was the owner of the whole mortgaged premises. Otherwise, the release of one-half of the premises from the operation of the mortgage, was without any consideration whatever, and the plaintiffs were placed in jeopardy of a loss of one-half their mortgaged debt.

The agreement was not immediately consummated, and in the meanwhile, under the pretense that he would carry it out, and the plaintiffs relying on his good faith, Howell obtained the release, and afterwards persistently declined to perform on his part, although there was no difficulty in his doing so. It turned out that he had but an equitable interest in the lot not released, but was entitled to a deed of the same on the payment of $1,500—the exact amount which the new loan

would have extinguished had the agreement been carried out, and the party holding the fee was ready and willing to execute such conveyance to him on receiving that sum. After procuring the release, however, and having it recorded, he refused to proceed any further in consummating the agreement, and giving as the reason for non-performance on his part, that the money was not forthcoming from the plaintiffs when he wanted it; that the time had gone by for selling the houses on the lots, and he would have to pay the interest and taxes on the lot not released from the lien of the mortgage, which, as between him and the person holding the title, the latter ought to pay.

It seems to me. to require but a simple statement of the case, to show the correctness of the judgment of the court below. The defendant Howell, having obtained the release, if not under false pretenses and misrepresentations, or concealment of the truth, yet without any consideration, and without carrying out the arrangement into which he had expressly entered, should be compelled to restore the plaintiffs to their former condition as to the security. It is no answer whatever to him, that as that part of the mortgaged premises, with the building thereon, is worth double the sum secured by the plaintiffs' mortgage, no damage could result to them by his surreptitiously obtaining a release of one-half the mortgaged premises. The value of their security is lessened one-half, and to that extent by the defendant's fraud or bad faith, they are put in jeopardy of loss. As the release could not be recalled, and that part of the mortgaged premises released was of equal value with what remains, subject to the lien, the only equitable mode of restoring the plaintiffs to their original condition as to their security, was that adopted.

The judgment should be affirmed.

Concurring—MULLIN, JOHNSON, DAVIES and INGRAHAM.

HOGEBOOM read for modification.

DENIO did not vote.

Affirmed.